IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| Michelle Johnson, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | Case No. 14 C 02694 |
| | ) | |
| v. | ) | |
| | ) | Judge Philip G. Reinhard |
| City of Loves Park, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

For the reasons set forth below, the court grants in part and denies in part Officer Eric Meadors's motion to strike [70], grants defendant Meadors's partial motion for summary judgment [48], and grants in part and denies in part the motion for summary judgment by defendants Aaron Johnson, Dan Johnson, Brian Martin, and Nicholas Mastroianni [44]. Officer Aaron Johnson and Officer Dan Johnson are terminated as defendants. The parties are to contact Magistrate Judge Johnston within 30 days to schedule a settlement conference.

## STATEMENT - OPINION

This matter arises out of plaintiff Michelle Johnson's May 23, 2013 arrest for driving under the influence of alcohol. In her complaint, plaintiff raises claims of conspiracy, unreasonable seizure, and false arrest against defendant officers Eric Meadors, Aaron Johnson, Dan Johnson, Brian Martin, and Nicholas Mastroianni (Counts I, III, IV), as well as an excessive force claim against officer Meadors (Count II), a failure to intervene claim against the other officers (Count V), a claim of indemnification against the City of Loves Park (Count VI), and a state claim of intentional infliction of emotional defense against all defendants (Count VII).

On October 30, 2015, officers Aaron Johnson, Dan Johnson, Martin, and Mastroianni filed a joint motion for summary judgment on all counts against them (Counts I, III, IV, V, and VII) [44], a memorandum in support [45], and Rule 56.1 statement of facts [46]. Officer Meadors also filed a partial motion for summary judgment with regard to the claims against him in Counts I, III, and IV [48], a memorandum in support [49], and Rule 56.1 statement [50].

On December 29, 2015, plaintiff filed a response to officer Meadors's motion for partial summary judgment [56], response to the Rule 56 statement [59], and additional facts [56-1]. Plaintiff also filed a response to the other officers' motion for summary judgment [57], response to the Rule 56 statement [58], and additional facts [57-1].

1

On January 29, 2016, Officer Meadors filed his reply [70] and response to plaintiff's additional facts [67]. Along with his reply, Officer Meadors filed a motion to strike plaintiff's response to his undisputed facts, as well as her statement of additional facts. *See* [70]. The other officers also filed their joint response to plaintiff's additional facts [68]. On February 1, 2016, the other officers filed their joint reply [71], which the court accepted [74]. The matter is now ripe for the court's review.

On summary judgment, the court construes all facts and draws all inferences in the light most favorable to the non-moving party. *Schepers v. Commissioner, Indiana Dept. of Corrections*, 691 F.3d 909, 913 (7th Cir. 2012). The court does not weigh evidence or determine the credibility of witness testimony. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). Instead, the court only grants summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). That said, Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Prior to addressing the merits of the parties' motions, it is necessary to set forth the undisputed facts located in the parties' Local Rule 56.1 Statements of Material Fact with respect to each motion. In addition, the court is cognizant of its obligation to construe all disputed and undisputed facts in the light most favorable to the plaintiff. *See Schepers*, 691 F.3d at 913. However, because portions of plaintiff's arrest were videotaped by two police dashboard cameras, as the Seventh Circuit has recently held, "[a] twist on the usual standard of review is at play here: When the evidence includes a videotape of the relevant events, the Court should not adopt the nonmoving party's version of the events when that version is blatantly contradicted by the videotape. Accordingly, we rely primarily on the video from the dashboard camera of [the officer's] vehicle." *Williams v. Brooks*, 809 F.3d 936, 942 (7th Cir. 2016) (internal citations omitted). As such, where "[t]he video clearly depicts the incident," the court will rely on the available videos if they blatantly contradict the parties' versions of events. *See id.*

## A. FACTUAL BACKGROUND.

As an initial matter, the court will address Officer Meadors's motion to strike plaintiff's response to Officer Meadors's statements of facts [59], as well as plaintiff's statement of additional material facts [56-1]. *See* [70]. With regard to plaintiff's response to Officer Meadors's statement of undisputed facts [59], Officer Meadors first points out that several of plaintiff's responses begin with "admit and clarify" rather than simply "admit." The court has reviewed those responses and does not find the purported violations to be a sufficient basis to strike those paragraphs; much of the "clarifying" information contained therein is repetitive of that in other paragraphs, and as Officer Meadors points out, the paragraphs they respond to are deemed admitted. Officer Meadors also points to issues with plaintiff's responses to paragraphs 30, 36, 38, 42, 44 through 47, and 49. Plaintiff has effectively admitted the substance of

2

paragraphs 42 and 49, either in her responses or elsewhere, and thus those facts will be deemed admitted. Plaintiff's responses to paragraphs 30, 38, and 46 cite to her one-page affidavit, which supports the substance of her response, and as such those responses will not be stricken.

Plaintiff's response 36 does not cite to any source, which is a violation of Federal Rule of Civil Procedure 56(c), and thus paragraph 36 will be deemed admitted. *See* F.R.C.P. 56(e)(2). Responses 44, 45, and 47 pertain to plaintiff's objection to the breath test on the basis of its admissibility, which is permissible under Federal Rule of Civil Procedure 56(c)(2). Plaintiff does not dispute the fact itself. Notably, in her response to paragraph 35 of the other defendants' statement of undisputed facts, which states "Plaintiff submitted to a breathalyzer test at the traffic stop and she testified that the result was .0875. . . . She was arrested after providing the breathalyzer test," plaintiff specifically responds that she "object[s], lack of foundation" but "Plaintiff admits the balance." *See* [58] at ¶ 35. Because a challenge on the sole basis of admissibility is permissible, the court will consider the underlying facts of undisputed paragraphs 44, 45, and 47, as well as plaintiff's argument that they should be discounted as inadmissible. As a final matter, the court notes that several of plaintiff's responses state that it is not disputed that witnesses have testified as stated. As other courts in this district have noted, where "a party disputes a statement, it must point to specific evidence in the record to support its contention. Otherwise, that statement is deemed admitted. Thus, the facts to which plaintiff so replies will be admitted." *See Ortega v. Chicago Public School of the Board of Education of the City of Chicago*, 2015 WL 4036016, at *3 (N.D. Ill. June 30, 2015).

With regard to plaintiff's additional statement of facts [56-1], Officer Meadors points out that some of the paragraphs contain non-material facts and others contain too many separate facts. The court has reviewed those paragraphs and finds that although they are deficient in several respects, the purported violations are not a sufficient basis to strike those paragraphs. Officer Meadors also argues that paragraphs 2, 11, 25, and 26 do not contain sufficient citations. Paragraph 2 contains no citations and is thus stricken, although the court notes that Officer Meadors himself sets forth effectively the same facts in paragraphs 19 through 23 of his own statement of facts. Paragraphs 11 and 25 cite to plaintiff's one-page affidavit, which supports the substance of these paragraphs, and as such those paragraphs will not be stricken. Paragraph 26 cites to the video on Exhibit B, the entirety of which purportedly supports the facts in paragraph 26; as such, that paragraph will not be stricken. Finally, the court finds that the above remedies are adequate to cure any defects in plaintiff's statements of facts, and thus it is not necessary to strike the response and statement of additional facts as a whole. As such, the motion to strike [70] is therefore granted in part and denied in part.

Turning to the material facts, plaintiff drove to Whiskey's Roadhouse Bar & Grill at approximately 11:00 p.m. on May 22, 2013, to meet her friend James Schwab. [59] at ¶¶ 9-12. While at Whiskey's, she consumed one Amaretto Stone Sour drink over the course of forty-five to sixty minutes; this was the only alcohol she consumed that night. [68] at ¶¶ 1, 25. However, she had also taken a Percocet earlier that night with dinner. [58] at ¶ 10. After leaving Whiskey's, plaintiff followed Schwab back to his home; she drove her 2005 Hyundai Sante Fe

3

SUV, while he drove ahead on his motorcycle. [59] at ¶¶ 10, 13-14. As they approached Schwab's home, they observed police officers with their emergency lights activated in a high-speed pursuit of another SUV vehicle. [59] at ¶ 15.

Also at this time, Officer Erik Meadors was in the area attempting to locate the fleeing SUV, which coincidentally matched the description of plaintiff's vehicle. [59] at ¶¶ 19-20. During his search, he observed plaintiff's vehicle and pulled her over, mistakenly believing that she was the fleeing driver that he was searching for. [59] at ¶¶ 21-23. It is undisputed that plaintiff's stop was based solely on this misidentification; she had not committed any traffic violations. [68] at ¶ 4.

Officer Meadors's vehicle camera depicts the initial stop of plaintiff's vehicle. *See* Ex. A; [58] at ¶ 46. After pulling plaintiff over, Officer Meadors approached her vehicle, exclaiming "turn the fucking car off now," "what are you fucking doing," and "I've been trying to catch you for how long?" *See* Ex. A. In response, plaintiff asked him to stop "talking to me like a madman." Officer Meadors is then depicted ordering plaintiff to "give me your fucking driver's license" and states that he will handcuff her if she does not comply with his orders. Plaintiff states that he cannot handcuff her, Officer Meadors replies "wanna bet, lady?," and she explains "I'm that disabled, sir."

After this initial exchange, Officers Martin, Mastroianni, Aaron Johnson, and Dan Johnson arrived at the scene and approached the vehicle. *See* Ex. A; [59] at ¶ 34; [68] at ¶ 10. The video shows that as the other officers approach the vehicle, Officer Meadors exclaims loudly "give me your fucking driver's license, now!" *See* Ex. A. Officer Martin later testified that if he had heard Officer Meadors state "give me your fucking driver's license" he could have intervened and advised him to stop. [68] at ¶ 24. The court finds from review of the video that a reasonable jury could conclude that Officer Martin and the other officers were near enough to overhear Officer Meadors's exclamation as they were walking to plaintiff's vehicle. *See* Ex. A.

As the officers approached her vehicle, plaintiff is depicted asking "excuse me, is there somebody here that can talk to me, I can't tell if he's going to hurt me" and explains "I've got a disabled neck and I'm a cancer patient." *See* Ex. A. Shortly after, while the other officers were standing by Officer Meadors and the plaintiff's vehicle, Officer Meadors ordered plaintiff to "step out of the vehicle," but plaintiff remained seated; according to plaintiff, she was panicked and confused by Officer Meadors's seemingly aggressive behavior. [59] at ¶¶ 23-24.

The video then shows Officer Meadors begin to pull plaintiff out of the car while she states "OK, but you're hurting me," "you're twisting my arm," and "he can't pull me like that." *See* Ex. A. Although the parties dispute what occurred next, and it is difficult to discern from the video, according to plaintiff she attempted multiple times to point toward the driver's door side pocket, where her handicap placard was located. [68] at ¶ 11. The other officers were present during this encounter. It is undisputed that Officer Meadors took hold of plaintiff's left wrist, unbuckled her seatbelt, and pulled her out of the car. [59] at ¶¶ 35, 37. According to plaintiff,

4

Officer Meadors yanked her left and right arm forcefully, and she heard her muscles and tendons pop from the force. [68] at ¶ 12. She also testified that Officer Meadors pulled her by her shoulder blades and she slammed her head near the driver's side window as she was removed from the vehicle. [68] at ¶ 13. Finally, plaintiff testified that at some point while she was still seated in her car, Officer Meadors grabbed the back of her head and smashed her head on the inside of the door. *See* [58] at ¶¶ 28-29. As plaintiff acknowledges, the video does not show anything more than Officer Meadors pulling her out of the vehicle, but she points out that the video is unclear on what exactly occurred inside the vehicle since the vantage from Officer Meadors's dashboard camera, directly behind her vehicle, does not allow for an angle into plaintiff's vehicle. [58] at ¶ 47.

After being removed from the vehicle, plaintiff was handcuffed by Officer Meadors with the assistance of Officer Mastroianni. *See* Ex. A; [59] at ¶ 39. According to his unchallenged affidavit, after removing plaintiff from the vehicle, Officer Meadors smelled the odor of alcohol on plaintiff's breath. *See* [59] at ¶ 40. It is undisputed that Officer Mastroianni also noticed that there was an odor of alcohol coming from plaintiff's breath and that her eyes were red and bloodshot. [58] at ¶ 53. Officer Mastroianni also observed that plaintiff had slurred speech. *See* [58] at ¶ 53. Plaintiff states in her statement of facts that the video does not demonstrate slurred speech. *See* [68] at ¶ 26. Officer Mastroianni testified after review of the video that "everything she says sounds slurred to me. It's more pronounced back then than it is over a video. It's probably a little harder to hear it over a video, but it sounds – it still sounds slurred to me. It sounded slurred then, and I can still hear it now." [50-5] at 19. In any event, plaintiff has admitted that at the time of the stop, "Officer Mastroianni observed . . . slurred speech," *see* [58] at ¶ 42, and that "[w]hen Officer Mastroianni encountered Plaintiff . . . her speech was slurred," *see* [58] at ¶ 53, which is not inconsistent with plaintiff's statement that slurred speech is not evident from the video itself. As such, Officer Mastroianni's observation of slurred speech will be deemed undisputed.

After plaintiff was handcuffed, Officer Mastroianni took command and performed a field sobriety test on plaintiff. [68] at ¶ 19. It is undisputed that by this point, Officers Aaron Johnson, Dan Johnson, and Sergeant Martin had left to respond to another call for service and did not participate in plaintiff's testing or ultimate arrest for driving under the influence. *See* [58] at ¶¶ 39-40.

Plaintiff's interactions with Officer Mastroianni immediately before, during, and after the field test are depicted on Officer Mastroianni's vehicle dashboard camera. *See* Ex. B; [58] at ¶¶ 46, 49. After review of the video, it is clear that Officer Mastroianni did not at any time raise his voice, but rather spoke to plaintiff in a calm and professional manner. Plaintiff has essentially conceded this point, as she noted in her deposition that Officer Mastroianni was "a nice gentleman." [50-2] at 19. Officer Mastroianni first removed plaintiff's handcuffs and explained to her that she had been mistakenly pulled over because Officer Meadors had believed she was the driver who had been fleeing from the police. *See* Ex. B. He then asked plaintiff if she had something to drink, to which she replied "no." It is undisputed that Officer Mastroianni asked

5

plaintiff several times whether she had ingested alcohol or medications during the encounter, and plaintiff repeatedly denied taking any medications or having anything to drink. *See* [58] at ¶ 51.

Officer Mastroianni explained that he would be conducting a field sobriety test and asked plaintiff if she had any impairments. *See* Ex. B. Plaintiff explained that she had a head injury which was approximately twelve year old, but had nothing wrong with her legs; she also explained that she had cancer; she also stated that she had a neck injury; she also stated that "I have vertigo, if I close my eyes, I fall" to which Officer Mastroianni responded "We are not going to have you close your eyes." *See id.*; *see also* [58] at ¶ 50. Officer Mastroianni then administered the Standard Field Sobriety tests, which included a horizontal gaze nystagmus test, a walk and turn test, and a lone leg stand test. [58] at ¶¶ 49, 52. It is undisputed that plaintiff lost her balance during the tests. *See* [58] at ¶ 53. The video reveals that during the lone leg stand test, plaintiff began to sway and stated "here I go, that vertigo" to which Officer Mastroianni responded "that's why I asked you about your injury, so I'm going to take that, absolutely into account." *See* Ex. B.

After the Standard Field Sobriety test, Officer Mastroianni asked plaintiff to take a field breath test. [59] at 44. When asked at his deposition if he would have asked her to take a breath test if plaintiff had passed all of the field tests, Officer Mastroianni testified that "I ask everybody to blow when they go through these things . . . . It's a standard that I do every time." [50-5] at 24. Plaintiff submitted to the test, resulting in a blood alcohol level of .0875, slightly above the legal limit; Officer Mastroianni then explained that he was placing her under arrest for driving over the legal limit. [58] at ¶¶ 35, 43; [59] at ¶¶ 45, 47. Plaintiff argues that this breath test is inadmissible and as such the results should not be considered for purposes of the present motion; the court will consider this argument when analyzing plaintiff's false arrest claim.

Immediately after being told that she was under arrest, plaintiff is depicted stating "I made a mistake," and after questioning by Officer Mastroianni, admitted to "having a few" at Schwab's house. *See* Ex. B; *see also* [58] at ¶ 55. According to plaintiff, these statements were untrue because she had not consumed any beer the day of the incident and had simply had the one Amaretto Sour drink at Whiskey's. *See* [68] at ¶ 25.

At some point following her arrest, it is undisputed that plaintiff was taken to the police station, at which time she was given a breathalyzer test which registered a blood alcohol level of .068, below the legal limit. *See* [58] at ¶ 45. Ultimately, plaintiff was taken to the Winnebago County Jail for processing. [58] at ¶ 56. The correctional officer processing plaintiff testified that he noticed an odor of alcohol on her breath as plaintiff spoke to him. [58] at ¶ 57. Tracey Wroble, a licensed practical nurse assigned to the medical intake window, also interacted with plaintiff at this time, at approximately 3:08 a.m. [58] at ¶ 58; [59] at ¶ 48. Plaintiff does not dispute that Nurse Wroble had no knowledge regarding why plaintiff had been arrested. Nurse Wroble testified that she smelled alcohol through the intake window as plaintiff spoke to her, and noted it in her paperwork. [58] at ¶ 59; [59] at ¶ 50. Nurse Wroble noted on the intake form that plaintiff stated that she consumed three beers on the date of her arrest; again, plaintiff denies that

she actually had consumed beer. [58] at ¶ 60; [59] at ¶ 52. Finally, it is undisputed that plaintiff admitted to Nurse Wroble that she was consuming pain medication. [58] at ¶ 62.

In his police report detailing the arrest, Officer Mastroianni did not include plaintiff's statements that she had vertigo and a neck injury, although he did include her statements that she had cancer. *See* [68] at ¶ 21; [60-3] at 4-5. Officer Martin testified that the fact that the plaintiff stated she had vertigo was material and should have been included in Officer Mastroianni's report. [68] at ¶ 23.

**B. ANALYSIS**

As noted, all officers have moved for summary judgment with regard to plaintiff's unreasonable seizure claims, false arrest claims, and conspiracy claims. Officers Martin, Mastroianni, Aaron Johnson, and Dan Johnson have also moved for summary judgment with regard to plaintiff's failure to intervene claims and intentional infliction of emotional distress claims. As a preliminary matter, in her response, plaintiff "agrees to withdraw all of her claims referable to Defendant Officers Dan Johnson and Aaron Johnson." [57] at 10. As such, the court grants summary judgment in favor of Officer Dan Johnson and Officer Aaron Johnson with regard to all claims against them. *See* [48]. Further, in her response to Officer Meadors's motion for summary judgment, plaintiff states that she "hereby withdraws the allegations found in . . . Count III" claiming unreasonable seizure. [56] at 1. As plaintiff does not mention Count III in her response to the other officers [57], she appears to abandon the unreasonable seizure claim with regard to all defendants. As such, the court grants summary judgment to all defendants with regard to plaintiff's claims of unreasonable seizure. *See* [44]; [48]. The court will address the failure to intervene, false arrest, conspiracy, and intentional infliction of emotional distress claims against the relevant remaining defendants in turn.

Plaintiff's Failure to Intervene Claims.

Of the remaining defendants, Officers Martin and Mastroianni have moved for summary judgment with regard to Count V, plaintiff's failure to intervene claim, alleging that they failed to intervene when Officer Meadors used excessive force in removing her from her vehicle. The Seventh Circuit has held that "an officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know . . . that excessive force was being used . . . *and* the officer had a realistic opportunity to intervene to prevent the harm from occurring." *See Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005) (internal modifications and quotations omitted). "A 'realistic opportunity' means a chance to warn the officer using excessive force to stop." *Miller v. Gonzalez*, 761 F.3d 822, 826 (7th Cir. 2014). "Perhaps more crucially, this Court has made clear that the prongs of this analysis almost always implicate questions of fact for the jury: Whether an officer had sufficient time to intervene or was capable of preventing the harm caused by the other officer is generally an issue for the trier of fact unless, considering all the evidence, a reasonable jury *could*

*not possibly conclude otherwise.*" *Abdullahi*, 423 F.3d at 774 (internal quotations omitted) (emphasis in original).

This standard raises a high bar for defendants seeking summary judgment. The Seventh Circuit has only granted summary judgment for defendant officers in circumstances where they "had no reason to think" that the offending officer would exercise excessive force, and the force occurred briefly and ceased before there was any possible chance to act or warn the offending officer. *See Miller*, 761 F.3d at 826-27 (officer had no reason to believe his partner would jump over a fence and strike the plaintiff once, "and thus no time to act until after the one blow to the jaw was over"); *see also Green v. Chvala*, 567 F. App'x. 458, 461 (7th Cir. 2014) (offending officer "kneed [the plaintiff] just once and stopped, so there was no chance for the officers to step in and no need to warn [the offending officer] to stop").

Here, the officers claim that they had no opportunity to act or warn Officer Meadors because plaintiff testified in her deposition that they were not present when Officer Meadors pulled her out of the car. However, as noted, "[w]hen the evidence includes a videotape of the relevant events," the court should "rely primarily on the video from the dashboard camera of [the officer's] vehicle." *See Williams v. Brooks*, 809 F.3d 936, 942 (7th Cir. 2016) (internal citations omitted). Here, the video shows that the officers had arrived at the scene and were surrounding Officer Meadors and the plaintiff's vehicle when he pulled her out of the car. *See* Ex. A. Moreover, there is at least a question of fact as to whether they heard Officer Meadors use increasingly aggressive language with plaintiff, including screaming "give me your fucking driver's license, now!" *See id.* Indeed, Officer Martin even testified that he could have intervened and asked Officer Meadors to stop after hearing such an exchange. *See* [68] at ¶ 24. Moreover, as the other officers arrived at the scene, the video depicts plaintiff asking "excuse me, is there somebody here that can talk to me, I can't tell if he's going to hurt me" and explains "I've got a disabled neck and I'm a cancer patient." *See* Ex. A. Finally, when Officer Meadors began pulling plaintiff out of the car, she complains "OK, but you're hurting me," "you're twisting my arm," and "he can't pull me like that." *See id.*

Under these facts, the court cannot find as a matter of law that the officers "had no reason to think" that Officer Meadors might use excessive force against plaintiff. *See Abdullahi*, 423 F.3d at 774; *Miller*, 761 F.3d at 826-27. Moreover, due to plaintiff's repeat complaints of pain during the alleged excessive force, the court cannot find as a matter of law that "there was no chance for the officers to step in" and warn Officer Meadors to stop. *See Abdullahi*, 423 F.3d at 774; *Green*, 567 F. App'x. at 461. Because material questions of fact remain, summary judgment is inappropriate and the court denies Officer Martin's and Officer Mastroianni's motion with regard to plaintiff's failure to intervene claims.

Plaintiff's False Arrest Claims.

All defendants have moved for summary judgment with regard to Count IV, plaintiff's false arrest claim, alleging that there was no probable cause to arrest her for driving under the influence.

As a preliminary matter, it is undisputed that Officer Martin was not present for the arrest, and as such the court grants summary judgment in his favor on plaintiff's false arrest claims.

With regard to Officer Mastroianni, who arrested plaintiff, and Officer Meadors, who participated in the arrest, the only relevant question for the court's review is whether the officers had probable cause to arrest plaintiff for driving under the influence. "Probable cause is a commonsense, nontechnical conception that deals with 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *United States v. Hobbs*, 509 F.3d 353, 359 (7th Cir. 2007) (quoting *Ornelas v. United States*, 517 U.S. 690, 695). "The Fourth Amendment prohibits unreasonable searches and seizures. However, the existence of probable cause renders both traffic stops and resulting warrantless arrests permissible. 'Probable cause exists if at the time of the arrest, the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Jones v. City of Elkhart, Ind.*, 737 F.3d 1107, 1114 (7th Cir. 2013) (quoting *Thayer v. Chiczewski*, 705 F.3d 237, 246 (7th Cir.2012)). In determining whether probable cause exist, courts must recognize that "[p]robable cause . . . is a fluid concept that relies on the common-sense judgment of the officers based on the totality of the circumstances. We objectively step into the shoes of a reasonable person in the position of the officer, and consider the facts known to the officer at the time. We do not consider the subjective motivations of the officer." *See Jones*, 737 F.3d at 1114 (internal quotations omitted).

Here, as noted, it is undisputed that both Officer Mastroianni and Officer Meadors smelled alcohol on plaintiff's breath, an observation made by several other individuals who interacted with plaintiff after her arrest. It is also undisputed that Officer Mastroianni noticed that plaintiff's eyes were red and bloodshot. Despite some inconsistent statements by plaintiff, it is also undisputed that Officer Mastroianni noticed slurred speech in his interactions with her. Plaintiff states in her statement of additional facts that slurred speech is not discernable from the video; however, as Officer Mastroianni points out, the audio of the video is not perfect, and as such this point is not inconsistent with Officer Mastroianni noticing slurred speech when interacting with plaintiff at the scene. It is true that plaintiff does state in her memorandum in opposition to the motion for summary judgment that her speech was not slurred, which would appear to be an attempt to dispute this fact. However, plaintiff explicitly admitted that Officer Mastroianni noticed slurred speech in her response to paragraphs 42 and 53 of his statement of undisputed facts, and as such the court will find the fact undisputed. *See Schulz v. Serfilco, Ltd.*, 965 F.2d 516, 518-19 (7th Cir. 1992) (district court may deem a fact admitted where plaintiff does not dispute the fact as required in her Rule 56 response but instead improperly attempts to "constructively den[y]" the fact in her memorandum in opposition). It is also undisputed that plaintiff did lose her balance during the Field Sobriety Test, although plaintiff argues that this should be discounted because Officer Mastroianni did not properly take her stated injuries into account. Finally, while she has challenged the accuracy and admissibility of her preliminary breath test, plaintiff does not dispute the fact that she submitted to the breath test and that it revealed a blood alcohol level of .0875, over the legal limit.

Taking these facts into account, and considering the totality of the circumstances, Officer Mastroianni had significant reason to believe plaintiff was driving under the influence. He was confronted with an individual whose breath smelled of alcohol, with slurred speech and red and bloodshot eyes, who nonetheless insisted that she had had absolutely nothing to drink. This insistence, in light of plaintiff's observable odor, would lead a reasonable officer to suspect that the plaintiff had been drinking and was lying to him about it. Further, when asked to submit to a field test, plaintiff lost her balance. As plaintiff points out, she did inform Officer Mastroianni that she had a neck injury and vertigo. However, even taking these stated conditions into account, which Officer Mastroianni acknowledged he would do, plaintiff's failure to keep her balance would surely add to a reasonable officer's suspicion that she was intoxicated. First, a reasonable officer would be entitled to take plaintiff's stated conditions with a grain of salt in light of the fact that some of her other statements appeared to be untruthful. Further, plaintiff explicitly told Officer Mastroianni that her vertigo occurred when she closed her eyes, which were open when she lost her balance. Considering the totality of the circumstances, these facts themselves were likely "sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect" had committed the offense of driving under the influence. *See Jones*, 737 F.3d at 1114.

But Officer Mastroianni still did not arrest plaintiff at that point. Instead, he asked her to submit to a breath test, which revealed that her blood alcohol level was above the legal limit. The Seventh Circuit's opinion in *Jones v. City of Elkhart, Ind.*, 737 F.3d 1107, 1114 (7th Cir. 2013) is instructive. In *Jones*, the plaintiff claimed that he had been falsely arrested for operating while intoxicated when he had consumed one beer and was arrested after, among other things, a preliminary breath test indicated his blood alcohol level was .096%. *See Jones*, 737 F.3d at 1115. The district court granted the defendant's motion for summary judgment and the Seventh Circuit affirmed. Because the case was at the summary judgment stage, the court accepted the plaintiff's contention that he had consumed only one beer. *See id*. While the plaintiff disputed some aspects of how the breath test was administered, the Seventh Circuit noted that this "does not put in dispute the administration of the test, or the results of the test that indicated [the plaintiff's] BAC was 0.096%. The assertion that [the plaintiff] consumed one bottle of beer that evening does not put into question the fact that [the plaintiff] consumed alcohol that evening. While there might be a question of fact about whether one light beer would cause an accurate registration of 0.096% hours later (though [the plaintiff] produced no facts of a scientific nature to raise that question), there is not a disputed fact that the machine did register that BAC for [the plaintiff]. That test result was sufficient to support probable cause for [operating while intoxicated]." *See id*.

As in *Jones*, the fact that plaintiff had only consumed one drink does not change the fact that the breath test showed that she was over the legal limit. Plaintiff argues that the breath test should be deemed inadmissible because defendants have not disclosed an expert to defend the accuracy of the breath test or otherwise support foundation of her blood alcohol level at the time. The admissibility of the breath test in the *Jones* test was not contested, most likely due to the fact that, as here, the accuracy of the breath test result was not truly at issue. As the district court noted in its order granting summary judgment, the only relevant issue to a probable cause determination was whether under the totality of the circumstances there was "a reasonable inference that [the officer]

did not reasonably believe the results of the [breath] test." *Jones v. City of Elkhart*, 2012 WL 5947707, at *10 (N.D. Ill. 2012). Because there was no evidence to make such an inference, the court found that probable cause existed. *See id.*

The analysis is the same here. Plaintiff points to foundational hurdles which are required when attempting to introduce a breath test in a criminal prosecution, where the plaintiff's blood alcohol level would be squarely at issue. Here, the only issue is whether a reasonable officer would be warranted in "believing, in the circumstances shown" that plaintiff had been driving under the influence. *See Jones*, 737 F.3d at 1114. There is nothing in the record which would create the inference that Officer Mastroianni should have questioned the results of the breath test, particularly in light of the other evidence that plaintiff had been drinking. As such, the court finds that under the undisputed facts, probable cause to arrest plaintiff existed and grants summary judgment in favor of Officer Mastroianni and Officer Martin with regard to plaintiff's false arrest claims.

Plaintiff's Conspiracy Claims.

As a preliminary matter, it is necessary to determine which conspiracy claims remain at issue. Count I of the complaint raises several claims of conspiracy against the defendant officers. Specifically: in paragraph 48(a) of her complaint, plaintiff alleges that the officers agreed to detain her without reasonable suspicion; in paragraph 48(b), she alleges that they agreed to arrest her without probable cause; in paragraph 48(c), she alleges that they agreed to falsely file criminal charges and institute criminal proceedings against her; finally, in paragraphs 49 through 51, she alleges that the officers conspired to cover up the unreasonable seizure, false arrest, and excessive force by "generating false and/or incomplete official reports." *See* [1] at 8-9.

In her response to Officer Meadors's motion for summary judgment, plaintiff states that she "hereby withdraws the allegations found in Count I, paragraphs 48(a) and (b)" but contends that "paragraphs 48(c), 50, 51, 52" were not addressed by Officer Meadors's motion "and Plaintiff therefore maintains these allegations and asks this Court to deny any relief pursuant to those Counts as any argument regarding said counts are waived." [56] at 1-2. However, the other officers did address all aspects of plaintiff's conspiracy claims, arguing, among other things, that there is absolutely no evidence of a conspiracy in the record; this argument applies equally to Officer Meadors. Because plaintiff had an opportunity to respond to this argument, the court may grant summary judgment for all defendants, including Officer Meadors. *See Osler Institute, Inc. v. Forde*, 333 F.3d 832, 836 (7th Cir. 2003) ("When there are no issues of material fact in dispute, a district court may grant summary judgment on its own motion-as long as the losing party is given notice and an opportunity to come forward with its evidence.").

First, the court will grant summary judgment as to plaintiff's withdrawn unreasonable seizure and false arrest conspiracy claims. In addition, summary judgment is appropriate with regard to the prosecution conspiracy claims, because plaintiff has proffered no evidence to suggest any conspiracy to initiate criminal proceedings, which in any event is the purview of prosecutors and not police officers.

The remaining allegations of conspiracy are that the officers conspired to generate false or incomplete official reports to cover up police misconduct surrounding plaintiff's arrest, including unreasonable seizure, excessive force, and false arrest. As defendants point out, these claims are insufficient to survive summary judgment because plaintiff points to no evidence that the reports generated by Officer Martin or Officer Mastroianni were prepared in collaboration with other officers, let alone the product of a conspiracy to falsify the reports. In fact, plaintiff fails to respond to defendants' arguments regarding the conspiracy claims, and as such has effectively abandoned them. *See Palmer v. Marion County*, 327 F.3d 588, 597-98 (7th Cir. 2003) (non-moving party abandons claim when failing to respond to motion for summary judgment in its brief in opposition) (citing *Laborers' Int'l Union of N. Am. v. Caruso*, 197 F.3d 1195, 1197 (7th Cir.1999)). Because no reasonable jury could find for plaintiff on these facts, the court grants summary judgment in favor of all defendants with regard to plaintiff's conspiracy claims.

Plaintiff's Intentional Infliction of Emotional Distress.

Of the remaining defendants, Officer Martin and Officer Mastroianni moved for summary judgment on Count VII, alleging intentional infliction of emotional distress. As Officer Martin points out, he did not participate in the alleged use of force and did not participate in plaintiff's arrest. Officer Mastroianni points out that he also did not participate in the alleged use of force. In addition, he points to the video in this case, which he contends shows a professional approach toward plaintiff. In fact, plaintiff herself testified that he was "a nice gentleman." [50-2] at 19.

Summary judgment is appropriate for several reasons. First, plaintiff again fails to respond to defendants' arguments in either of her briefs and as such appears to abandon her claims. *See Palmer*, 327 F.3d at 597-98. Second, there is no basis on the record for a jury to find for plaintiff. "Under Illinois law, a plaintiff may recover damages for intentional infliction of emotional distress only if she establishes that: (1) the defendant's conduct was extreme and outrageous, (2) the defendant intended to inflict severe emotional distress or knew that there was at least a high probability that his conduct would inflict severe emotional distress, and (3) the defendant's conduct did cause severe emotional distress." *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 604-05 (7th Cir. 2006). As discussed in the factual background section, Officer Martin and Officer Mastroianni were not involved in the initial stop or the alleged force against her. As such, no reasonable jury could find that their conduct itself was extreme or outrageous with regard to those events. Further, Officer Martin left shortly after arriving at the scene, and the court's review of Mastroianni's videotape reveals that he conducted himself professionally and courteously with plaintiff, a finding that is supported by plaintiff's after-the-fact characterization of him as "a nice gentleman." [50-2] at 19.

Because there is no evidence of extreme or outrageous behavior on the part of Officer Martin or Officer Mastroianni, and plaintiff fails to respond to the officers' arguments, the court grants summary judgment in favor of Officer Martin and Officer Mastroianni on plaintiff's intentional infliction of emotional distress claims.

Following this decision, the remaining claims against the remaining defendants are as follows: Count Two, excessive force, against Officer Meadors; Count Three, failure to intervene, against Officers Martin and Mastroianni; Count VI (state indemnification pleading) against the City of Loves Park; Count VII (state claim), intentional infliction of emotional distress, against Officer Meadors. The parties are to contact Magistrate Judge Johnston within 30 days to schedule a settlement conference.

Date: 03/04/2016                ENTER:

*Philip G. Reinhard*

United States District Court Judge

Electronic Notices. (LC)
Copy to Magistrate Judge Johnston